Good morning, Your Honors. May it please the Court? Please adjust that microphone and be sure to speak up so we can all hear you clearly. There you go. Thank you. Is this better? Why don't you say a few things and then we'll let you know. Good morning, Your Honors. This is a case where one group of developers and their real estate agent and architect began planning, marketing, and selling units in a to-be-built condominium development. before they actually finalized their plans. As would not be unexpected given these facts, their plans deviated materially from those represented to initial purchasers, and many never came to fruition. These problems were exacerbated when the original group of developers sold their interests at a tremendous profit to a second group of developers, who then later engaged in a protracted dispute about the direction of the development. The rush to sell units before finalizing plans, the extraction of profits before construction had even begun, and the management disputes between the various developers about the project were all the direct fault of either the developers and or their real estate broker and architect. Now, none of these parties want to be held responsible for the damage caused by these actions to purchasers and the development, like the streambend entities that are the appellants in this action. The equities in this case weigh in favor of providing purchasers like streambend the relief they seek. By the equities, I take it you mean somebody made a profit? Correct, Your Honor. They made a loss? You wouldn't be here. If the property sold for a loss later, you wouldn't be here. If a profit had not been made on the development, it would be likely that the lawsuit wouldn't provide relief for my client. So I think you're correct that we probably wouldn't be here today. However, the violations of the ILSA that the developers engaged in in this case did result in a profit for them, and thus the appellants seek relief. Today I'm going to talk about three errors made by the district court in this case. First, the district court erred by dismissing the ILSA claims on the statute of limitations. Second, the district court erred by dismissing McKiowa claims on standing. And third, the district court erred by finding collateral estoppel applied to streambend state law claims. These errors were among many other errors by the district court as well. Developers' primary defense against Streambend's ILSA claims is a statute of limitations affirmative defense. In 2007, some among the developers in the present action were working with the city of Minneapolis to obtain approval for the creation of a condominium development that would sit atop a parking structure that developers had committed to building in the documents provided to Streambend in 2004. And yet the district court found that Streambend should have known a year earlier that the parking structure would not be built, and that representations made about the parking structure in 2004 were untrue or misleading. The district court arrived at this conclusion by tying together every single violation of the ILSA, finding that the very first violation of ILSA triggers the running of the statute of limitations for every possible ILSA violation, even ones that would otherwise accrue many years later. The allegations show that although Streambend was aware that on June 1st, 2006, the date of the unlawful service of the notices of cancellation, those things that were represented would be done before closing were not done, Streambend had no idea at the time that those represented things that would never be done until 2009. Indeed, Streambend learned further material details about developers' conduct. Well, the developers continued to represent that a parking structure would be built, and they represented this both to the city and neighborhood organizations, and they continued to represent that up until long past 2006. If I understand the facts, from the very beginning, your client knew there wasn't going to be the parking that had been talked about in the first place. One of the most important parts of this case is the federal claim, in which the district court of Minnesota decided that there was no standing because the entities, the corporations, if I remember right, I may have it mixed up, but they were not in existence when the individual brought his action. And that has never been, maybe right, maybe wrong, but that's a judgment that we have to give full faith and credit to, in which the district court is the reason that knocked out the federal claim, right? Correct. And in our pleadings, we talk about a number of theories under which a corporation whose Secretary of State documents weren't technically signed at the time of the original purchase would still be treated as a corporation. But this is a claim, though, where the state court already ruled against you. Is that what you're saying? I think I'm a little confused about the question. Could you restate that? Didn't the state court, say, rely on the fact that the corporation was not in existence in dismissing and ruling against your client or Hammond in the state court proceeding? Yes, but I believe they did so in error. I understand that, but Judge Bright's question was directed to the fact that we have to give full faith and credit to the state court judgment. So how do you propose to avoid the state court judgment, other than arguing that it was wrong? This is your collateral estoppel, res judicata problem, as I understood your introduction. Correct. So... You want to speak to that? Correct. So the state court's action was in regards to notices of cancellation. And Streambend, or rather Hammond, who was the party in that action, was actually defending against an action initiated by the development. And so, in defending that, he didn't give up his right to pursue these claims at another date. But he did take the, didn't he get $18,000, get his down payment back? No, Sexton Lofts was an insolvent corporation at the time of the state court action, and... But I thought Streambend got his earnest money back. It was awarded earnest money, but even the state court knew at the time that that would never be paid, because Sexton Lofts was already insolvent. It was simply a way of disposing of the case to create the least harm to all of, to the plaintiffs. Streambend learned further material details about developers' conduct in late 2012 that led it to understand that the representations made to purchasers in 2004 were for plans that had not been finalized. The discovery rule applying to ILSA is a statutory rule. 15 U.S.C. 1711A2 states, no action shall be maintained more than three years after discovery of the violation or after discovery should have been made by the exercise of reasonable diligence. Congress expressly provided that each violation of ILSA represents a separate and distinct violation. Each has its own separate statute of limitations. The district court decision pointedly ignores the law. What's your best authority for that? Are you just drawing on the text of the statute? The text of the statute. Do you have any case you think we should focus on in that regard? I know in my brief I do. I could address that on rebuttal, Your Honor. No, that's all right. We have the brief. Well, I've got a question on this ILSA claim with the three-year statute of limitation. Surely everything that there was to know about what happened in this transaction and complete knowledge about any alleged failures to perform, all of that came out in this 2006 state court proceeding. Certainly, it seems to me that would be clear. So how do you, at least by that date, everybody's on notice of all the facts about this matter. And doesn't that date then, just as a matter of law, eliminate on limitations grounds this federal claim? Actually, no, Your Honor. In the state court action in 2006, the developers continued to represent that the parking structure would be built. And after that date, continued to make those representations. So Streeman couldn't have known that those representations were false when they were being made under oath in court. That's not the way I understood the record. I understood the record the way... Originally, wasn't there supposed to be an individual garage? That was the basic arrangement for parking. What was it? There was a four-story parking structure that was to be built, and each unit was assigned to have one or two spots. And that was never built? Correct. Everybody knew that. They never had permission to build it? It was never built, as a matter of fact? When the original developers gave notice that they were terminating the rights that your client had, nothing was said about it then? Correct? If you're referring to that everybody knew that, if you're referring to that everybody knew that when the state court action was proceeding, what was known is that the parking structure hadn't been built until that time. What we didn't know is if the parking structure would ever be built. It was never built? It was never built. However, the developers continued to represent that it would be built. Would you like to save any time for rebuttal? I would. All right, very well. Thank you. Mr. Davidson, we have a little unusual situation here in which the appellant waived oral argument and the appellee requested it. So we'll hear from you now. Thank you, Your Honor. May it please the Court, my name is William Davidson. I represent Appellee Burnett Realty, the real estate broker in this lawsuit. I'm speaking on behalf of all the appellees, the various other defendants and developers who are appellees in this matter. We requested oral argument, Your Honor, simply because this is a relatively complex factual record and detailed procedural history, but as a matter of law, this Court should affirm Chief Judge Davis' careful consideration of this matter built upon Magistrate Judge Rao's careful consideration of this matter. This involves a dismissal of a third amended complaint. There was a fourth proposed amended complaint, and whether that is in this case or not, I can certainly address. But bottom line, Chief Judge Davis carefully considered this matter and determined, as this Court is aware, that the federal claims, the Interstate Land Sales Full Disclosure Act claims, the ILSA claims, were time barred under the clear three-year statute of limitations. That applies to violations under the Act. Do you agree with Ms. Rojas that each violation, or that each violation triggers a new running of the statute? We do not, Your Honor. We believe that the, here, all of the violations are all basically of two kinds. One, allegations and alleged violations dealing with the parking structure itself. And the second bundle, or separate allegations, deal with the fact that clear title did not exist because there were mechanics means placed on this property as this development was being constructed. All of those facts, and all of those alleged violations, were known certainly no later than 2006, or, as Chief Judge Davis and Magistrate Judge Rauh found, through the exercise of due diligence, could have been discovered. And they were on notice. That's a different point than saying that they don't each start their own period. You're just saying even if they all have a separate statutory period, they were all known. They were all known, but we see nothing. When do you think they run from, then, if not when each one occurs? They run from, per the language of the statute, when the violation occurred, or when the violation was known, or through due diligence should have been known. That's the part of the illicit that we're dealing with here. Well, your point is that there are multiple violations alleged, so you've got to look at the timing of each one, and add three years to that. And that is certainly appellant's contention. We see nothing in the statutory language, and nothing in the case law that's been cited that any of the courts that have addressed this have recognized that there is some sort of continuing violation theory. We've cited two primarily similar RICO statutes, analysis that this circuit has addressed, that has not essentially recognized a continuing violation type of theory for an accrual of a claim. My understanding of some of the state claims were not dismissed on the statute of limitations, but were dismissed for other reasons. For example, the purchase agreements, which were trying to be enforced, there was collateral estoppel on that. That's correct, Your Honor. But this was all on the pleadings. Was that shown in the pleadings? Or did the district court go beyond the pleadings in deciding this case? All of the facts that were needed to be known to address the collateral estoppel argument, Your Honor, were part of the pleadings. Part of the pleadings. Yes, either through the various... Tell me, where was the collateral estoppel? That's true. What was they suing on, that collateral estoppel? In the 2006 state court action that Gerald Hammond, the principal and the owner, and the sole owner of these streambed entities, brought. And he did bring an action. It originally commenced when cancellation notices of the development and the purchase agreements were served upon him. But then he affirmatively brought an action. And ultimately, Judge Howard of the Hennepin County District Court dismissed that action. And that... You call that collateral estoppel, but it's estoppel by judgment. It would be... There's variations of both estoppel by judgment, issue preclusion, and claim preclusion in this case, Your Honor. And then there's fraud claims. And the judge... This judge here, Judge Davis, said that there's a failure to plead reliance. There was a determination that there was a lack of reliance based not only on the prior state court judgment ruling, but also as the reality is that these streambed entities did not exist when they entered into the purchase agreement. Yes. And there were determinations that, as a result, they could not, as a matter of law, relied upon any of the alleged wrongful representations. Why couldn't they? Because there were no contracts. As well, Your Honor. They're all intermingled here. They are all intermingled. With that Minnesota judgment. Correct. And the various state law claims were asserted or were argued in the state court action back before Judge Howard. Can you elaborate on this reliance rationale of the district court? Why couldn't streambed rely on the representations? Back in 2004 when they entered into the purchase agreement. Well, or at any time. I don't know if they have to show that they relied on them at the moment they were made. Well, I'm musing, Your Honor, if there were subsequent representations that they want to use to deal with equitable estoppel. I'm not talking about subsequent. It just reads like they couldn't have relied on them at the moment they were made because they weren't in existence. As I understand their argument and as I understand the procedural history here, Your Honor, there were two basic findings or outcomes dealing with this reliance and when the entities existed. Purchase agreements were entered into signed by Gerald Hammond on behalf of two entities, streambed three and four that did not exist at that time. Judge Howard made a determination that these purchase agreements as a result were void and that judgment is the basis of the issue preclusion and claim preclusion arguments we've asserted that Judge Davis and we believe this court should give full faith and credit to. As to separate determination, just stripping away, let's say there was no state court judgment, could there be a fraud claim? I believe that both Chief Judge Davis and Magistrate Judge Rao believe that the representations that were made before the streambed entities existed, the representations that caused them to enter into the purchase agreement simply as a matter of law could not be the basis for a reasonable reliance element of a fraud and misrepresentation claim. Right, that's what I wanted to address. I already knew that's what the judge said. Wanted to clarify that that's what we're talking about here and as to that, we agree with Chief Judge Davis. Our leaders say that we relied upon that because they didn't exist when those representations were made and they, the party that's bringing these claims, these two entities, you know, couldn't have acted in reliance on things when they didn't exist. You mean because the representation wasn't made to them? Because they didn't exist, either because it wasn't made to them or because they didn't exist. Later, a few days later and they could have relied on it then, the argument might go. The argument might go. Why couldn't they rely on it a week later when they do exist? I'm not sure that they've alleged that, that they, in reliance upon these things that were made when they existed, asserted that claim. You mean their argument is just that they relied on the representations to enter into the agreements that were declared void? Is that how you understand it? That's my understanding of what their assertions are. Well, and certainly appellants have argued that that's in error and they've argued lots of things trying to collaterally attack the original state court judgment from Judge Howard, a judgment that Mr. Hammond chose not to appeal. Even if that determination or decision was wrong, as this court is well aware and as we've cited, both Supreme Court precedent, 8th Circuit precedent, precedent from around the country, as you're creating a situation here where courts are, as in this case, brought into a matter several years later by new entities and at the time when, through the tortured history of this case, when the initial motion to dismiss was brought by my client, Burnett Realty, we were unaware, based on just the pleadings themselves, that there had been this prior lawsuit.  disclosed it in the course of this litigation through their myriad motions to amend and we learned of this 2006 judgment and the 2007 judgment, the 2006 state court action and even then, Chief Judge Davis and Magistrate Judge Rao expressed their concerns about either Rice-Judicata or Rooker-Feldman and other concerns about the sanctity of that state court judgment and appropriately so. It's not appropriate for appellants here having litigated matters and losing them, having been on notice back in 2006 of the very basis to come into federal court in 2010 and then litigate that for three or four years through myriad motions to amend, adding additional parties, bringing an appeal here to contest and try to go back and undo Judge Howard's state court judgment from 2007. It's just not appropriate. It's not appropriate under any of the doctrines that we've cited. It's not appropriate use of judicial resources. It should be rejected as Chief Judge Davis did. Appellants, numerous opportunities to plead a legitimate complaint and they simply could not do so. I'll refer the court in response to the argument which we've seen from appellants in their briefs to this notion that, well, yeah, we had litigation in 2006 that we lost in 2007, but we couldn't have known about this parking ramp. I'll refer the court to two things. I think the court is aware of it. We set out all of the factual allegations that appellants through their then Principal Gerald Hammond, their current principal, asserted and knew about the parking ramp structure dispute and the mechanics lien. And then as well I believe it's... You found that in the 2006 state court record? In the pleadings, in the state court record, yes. Out of the horse's mouth. Well, I do have one concern about the limitations. This was a 12B6 dismissal. Was there really enough in the amended complaint, enough description of the 2006 state court proceeding and judgment to support a dismissal based on limitations? I mean, it's kind of unusual, isn't it? It is somewhat unusual. This is somewhat unusual given the procedural history and the lengthy developments here. But academically, Your Honor, if we were just looking at a complaint or an amended complaint and it was pretty bare bones, I would tend to agree with you that might not be enough on a 12B6 motion to dismiss. But as well, in addition to a very detailed amended complaint and the like, it is appropriate, and we've cited numerous cases of silence, and that's appropriate when considering particularly the res judicata collateral estoppel arguments. But it is appropriate. It is even appropriate on a 12B6 motion, Your Honor. What's your best authority for that? I apologize, Your Honor. I know that we did cite it and address it in our brief that it is appropriate for a court to look at the public record and to rely upon that, both in the res judicata and in the public record. What are those documents that you cite at pages 28 and 29? Pages 28 and 29, document 136, I believe, if we're on the same page, Your Honor. What is that, 136-2 and 136-3? Yes. Those were affidavit exhibits brought by one of the defendants, motion to dismiss. But specifically, those were the pleadings in the state court action. It converts it into a summary judgment motion, doesn't it? It can under the rules and Rule 56 does call for that, Your Honor. But I will also note appellants have not argued here that the summary judgment standards apply. And even if it did, Your Honor, it doesn't change anything. Even if this court decides that the district court should have converted this to a Rule 56 motion, it doesn't change the legal effect of the statute of limitations. And to circle back to that point, I'll refer this court to, I believe it's addendum 69, where Magistrate Judge Rao, in one of his last report and recommendations, which Chief Judge Davis adopted in full, I believe it's document 299, where we're getting to the end of the lengthy record, examined in detail, starting at addendum 69 and 70, examined in detail this notion that the 2006-2007 information somehow could not have been known. It is clear whether this is treated as a 12B6 or if this court considers it to be treated and converted to a Rule 56, the three-year statute of limitations under ILSA has run. And it ran long before this suit, this federal suit, was brought. For those reasons, and the rest addressed in our brief and absent any questions from the court, we would ask that this court affirm Chief Judge Davis's judgment. Thank you. I'd like to address the state court action in a bit more detail. A key element to Sexton Laf's defense of its notices of cancellation was its argument that it could assign parking and housing through a document evidencing the assignment and then deliver actual possession of the parking stalls once the parking structure was completed. On pages 16 through 18 of appellant's brief, we specifically detail various representations made in the state court action regarding that the parking structure would be completed. So specifically, this is what I'm referencing when I say that appellants could not have known at the time of the state court action that the parking structure would not be completed because throughout the state court action, representations continued to be made that this parking structure would, in fact, be completed. Additionally, I want to point out that the existence or non-existence of the stream bend entities does not bear on the federal ILSA claims under the stream bend v. Carlisle decision of this court. Proof of actual reliance is not an element of a federal ILSA claim. That's a state court claim. Reliance was for the state court claim. Not the federal claims, but the joint state court claims. Yes, Your Honor. Actually, that is what confused me earlier. I was talking about reliance with regard to the state law claims and a number of arguments that we made about de facto corporations and how we could overcome that argument. But with regard to the ILSA claims, which dominated most of the discussion today, proof of actual reliance is not an element. Very well. Thank you for your argument. Thank you. We appreciate the help from both counsel and we'll take the case under advisement and render a decision in due course.